**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JOCELYN JOY DEVOTI**                                                                      **PLAINTIFF**

**V.                                   CASE NO. 4:15-CV-626-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                        DEFENDANT**

**ORDER AFFIRMING THE COMMISSIONER**

Jocelyn Joy Devoti seeks review of the Commissioner's decision to deny her claims for disability benefits. Ms. Devoti filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (R. at 80) Ms. Devoti's claims were initially denied, and she requested a hearing before an Administrative Law Judge ("ALJ"). (18) The ALJ determined that Ms. Devoti was not disabled under Title II of the Act. (30) The Appeals Council denied Ms. Devoti's request for review, thus making the ALJ's decision the Commissioner's final decision. (1)

Ms. Devoti claimed disability based on generalized anxiety disorder and attention deficit/hyperactivity disorder. (80) The parties consented to the jurisdiction of a Magistrate Judge, and the case is ripe for decision.

**I.    The Commissioner's Decision**

The ALJ found that Ms. Devoti had not engaged in substantial gainful activity since her alleged onset date of May 31, 2011. (20) After addressing step 1 of the sequential five-step evaluation process, the ALJ found at step 2 that Ms. Devoti had the following severe impairments: attention deficit/hyperactivity disorder and generalized

anxiety disorder. (20) At step 3, the ALJ determined that Ms. Devoti's impairments did not meet or equal a listed impairment. (21)

Before proceeding to step 4, the ALJ determined that Ms. Devoti had the residual functional capacity ("RFC") to perform medium work, but with added limitations. The work must consist only of simple, routine, repetitive tasks with only incidental interpersonal contact, where supervision is simple, direct, and concrete. (21) Fine hearing could not be required. (21) The ALJ found that Ms. Devoti's medically determined impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects were not entirely credible. (23) The ALJ considered Ms. Devoti's complaints regarding her pain, treatment, and medication in arriving at the conclusion that she could perform medium work with additional limitations.

After considering Ms. Devoti's age, education, work experience, and residual functioning capacity, the ALJ found that jobs existed in significant numbers in the national economy that Ms. Devoti could perform. (28) Consequently, the ALJ found that Ms. Devoti was not disabled. (30)

## II. Discussion

### A) Standard of Review

Ms. Devoti's points on appeal are intertwined and can be narrowed to two arguments: 1) the ALJ's decision is not supported by substantial evidence; and 2) Ms. Devoti met a listing. The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. Even so, the Court cannot reverse the decision, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

### B) Commissioner's decision supported by substantial evidence

Ms. Devoti's only argument as to substantial evidence is that she was traumatized by being involved in the sex slave trade as a youth. (Pl. Brief at 3). There is no mention in the record of Ms. Devoti being sold into slavery. Notwithstanding Ms. Devoti's failure to make a grounded argument that the ALJ's decision was not based on substantial evidence, the Court finds broad support for the Commissioner's decision.

The ALJ detailed Ms. Devoti's treatment by several doctors.  Under the treating-physician rule, an ALJ must give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).  See 20 C.F.R. §§ 404.1527(c)(2).  She saw Dr. Joe Daugherty only four times from November 2011 to January 2014.  (22)  Dr. Daugherty did not prescribe medications regularly, and the check-ups mainly focused on gynecological or urinary tract complaints.  (23)  On June 4, 2013, Dr. Daugherty reported that her mood and effect, orientation, and memory were within normal limits.  (298)

Ms. Devoti saw Dr. Thomas Stinnett three times from May 2011 to August 2011.  (22)  He diagnosed her with moderate major depressive disorder and generalized anxiety disorder.  (*Id*.)  He reported that at last contact, she said she was feeling better.  (*Id*.)

Dr. James Moneypenny saw Ms. Devoti for a mental status consultative evaluation on October 4, 2012.  (*Id*)  He diagnosed her with post traumatic stress disorder, generalized anxiety disorder, attention deficit/hyperactivity disorder, and borderline personality disorder.  (*Id*)  He noted that her capacity to adapt and adjust on an interpersonal basis in a work setting, as well as her ability to attend and sustain concentration, were poor.  (*Id*)  He opined that her ability to sustain persistence and complete work-like tasks in an acceptable time-frame was fair.  (*Id*.)

Ms. Devoti sought mental health treatment sporadically from Professional Counseling Associates but missed several appointments. (23) She reported to Dr. Richard Flanigin that she was taking medications consistently and that she was doing fairly well as of November 18, 2013. (*Id.*)

The ALJ noted that while Ms. Devoti was prescribed medications since her alleged onset date, she was not always compliant in taking her medications. (24) Moreover, she admitted to smoking marijuana over her physician's objections. (*Id.*) The ALJ concluded that this negatively affected her credibility. (*Id.*)

Ms. Devoti worked as a hairstylist part-time at the time of the hearing, and worked as a photographer until January of 2012. She also worked as a dental assistant and fast-food and retail worker. (41, 155) The ALJ noted that these jobs required significant periods of standing and her work contradicted her testimony that she could stand for only one hour at a time. She also stated that she could sit for only two or three hours a day.

Ms. Devoti reported problems with memory, concentration, completing tasks, understanding, following instructions, getting along with others, getting along with authority and handling stress/change. (25) There was no evidence showing that Ms. Devoti's conditions would cause these symptoms to any degree of severity.

In assessing the subjective complaints of a plaintiff, the ALJ must consider: (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of

any medication; (5) treatment other than medication; and (6) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). This does not require a methodical discussion of each factor, as long as the ALJ acknowledges and examines these considerations in assessing the claimant's subjective complaints. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The ALJ considered Ms. Devoti's symptoms resulting from her mental diagnoses and factored those into the RFD determination by adding limitations to her ability to perform medium work. (24) He also considered that her history of medication compliance was poor and found that her lack of consistent, regular mental health check-ups diminished the credibility of her complaints. (*Id*.)

As far as daily activities, Ms. Devoti reported that she could prepare meals, go out alone, drive, and shop in stores. (25) Dr. Moneypenny confirmed that she was capable of general independent living skills. (*Id*.) Ms. Devoti's doctors placed no functional restrictions on her. The ALJ appropriately considered the *Polaski* factors in assessing Ms. Dovti's the subjective complaints: her lack of consistent and regular mental health treatment, her failure to take medication as prescribed, her ability to work to some degree, her reports of improvement over time in her condition, and her ability to maintain independent functioning outside the home. These factors weighed against her report of disabling symptoms. Accordingly, the ALJ's finding that her complaints were not entirely credible is well supported.

**C) Ms. Devoti did not meet a listing**

Ms. Devoti argues that she met listings 12.02, 12.04, 12.06, and 12.08 in the Adult Listings of Impairments, and that the ALJ erred in concluding that she did not. A claimant has the burden of proving that an impairment, or combination of impairments, meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

A claimant must meet Paragraph "B" of those listings to be considered disabled. To satisfy "paragraph B" the mental impairments must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.02, 12.04, 12.06, 12.08.

Ms. Devoti's activities of daily living could not be described as marked, as she was capable of general independent living skills, based on her testimony and the opinion of Dr. Moneypenny. (25). There is no evidence in the record of marked difficulties in social functioning, and Ms. Devoti does not provide any evidence of that in her Brief. Dr. Moneypenny concluded that her concentration was poor, but that her persistence, pace, and ability to complete tasks in a work-like setting were fair. (22). The court cannot

assume marked restrictions based on that mixed conclusion, and there was no other evidence to support a marked finding. Ms. Devoti had no episodes of decompensation.

Ms. Devoti did not meet paragraph C in any of the listings she argues that she met. Paragraph C requires a medical impairment resulting in the complete inability to function independently outside of one's home. She does not show any history of a chronic anxiety-related disorder resulting in a complete inability to function independently outside the area of her home. Again, Ms. Devoti admitted that she could engage in activities of independent daily living.

Ms. Devoti has not met her Step 3 burden in the five-step sequential analysis for cases under the Act. Sufficient evidence in the record supports the ALJ's finding that Ms. Devoti's symptoms did not equal or meet any of the relevant disability listings.

## III.  Conclusion

There is substantial evidence to support the Commissioner's decision that Ms. Devoti retained the residual functional capacity to perform a reduced range of medium work. There was no legal error in the ALJ's finding that Ms. Devoti did not meet a listing. The finding that Ms. Devoti was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, affirmed. The case is dismissed, with prejudice this 28th day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE